# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 5, 2005

## STATE OF TENNESSEE v. BOBBY NELSON

**Appeal from the Circuit Court for Sequatchie County**
**No. 4270     Thomas W. Graham, Judge**

---

**No. M2004-01720-CCA-R3-CD - Filed June 9, 2005**

---

The Defendant, Bobby Nelson, upon his plea of guilty, was convicted of arson, a Class C felony. Pursuant to the plea agreement, the trial court was to establish the length and manner of service of the Defendant's sentence. The sentence for arson was to be served concurrently with another sentence the Defendant was already serving for prior convictions. Following a sentencing hearing, the trial court found the Defendant was a Range I, standard offender, sentenced him to four and a half years, and ordered the Defendant serve his entire sentence with the Tennessee Department of Correction (TDOC). On appeal, the Defendant argues two issues pertaining to sentencing: (1) the trial court erred by imposing an excessive sentence, and (2) the trial court erred in denying probation or alternative sentencing. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and J. C. MCLIN, JJ., joined.

B. Jeffery Harmon, Assistant Public Defender, Jasper, Tennessee, for the appellant, Bobby Nelson.

Paul G. Summers, Attorney General and Reporter; Michael Markham, Assistant Attorney General; and J. Michael Taylor, District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

According to the State's representations at the plea acceptance hearing, the facts surrounding the offense at issue in this case can be summarized as follows:

The State would be showing that on February the 14th, 2003, a business known as Signal Mountain Auto Sales, which was owned by Willie Goins was damaged by

fire. The fire was started inside the building, caused apparently pretty extensive damage to them. That Hamilton County detectives were investigating other arsons and they conducted an interview of Mr. Nelson, that after advising him of his rights et cetera he admitted to a -- some criminal activity in Hamilton County. He also advised that he and another individual broke into the James Shell Auto located in Sequatchie County which was owned by Mr. Goins, and set the place on fire. He said that they started the fire by pouring gasoline on the wall heater inside the business. That proof would show that the business suffered extensive damage as a result of the fire.

The Defendant confirmed the above facts were true.

In May of 2003, the Defendant was indicted by a Sequatchie County grand jury for one count of arson.[1] See Tenn. Code Ann. § 39-14-301. In April of 2004, the Defendant entered a plea of guilty to one count of arson, and agreed to be sentenced by the trial court. At the plea hearing, the court found that the Defendant understood the constitutional rights he waived by entering a guilty plea, and had done so both knowingly and voluntarily. The court accepted the Defendant's guilty plea and convicted the Defendant of one count of Class C felony arson.

In May of 2004, a sentencing hearing was conducted to determine both the length and manner of service of the Defendant's sentence. At this hearing, Annette Millwood, the Defendant's mother, testified that the Defendant had a long history of alcohol abuse "from a young age." She also stated that she believed he was sorry for his criminal activity and was reforming his ways. She noted that after serving a year in "the pen," the Defendant "learnt [sic] a lesson because he -- it really scared him." Ms. Millwood also admitted that she had taken steps with her son before to try and keep him out of trouble, with little success.

Ms. Amy Sanders, the Defendant's aunt, testified that the Defendant was helpful and "good hearted." He was good with children, and she would have no hesitation in allowing him to babysit her three children. She also stated that she would help the Defendant attend any court-ordered rehabilitation programs or counseling should he be granted some form of alternative sentencing. The Defendant's uncle, Mr. Sanders, also testified at the sentencing hearing, stating that he would employ the Defendant in his tree trimming business as soon as the Defendant was released from prison.

The Defendant testified at the sentencing hearing that he "acts different" when under the influence of alcohol. He said that he was sorry for what he did, that he confessed everything to the police, and that he wanted another chance to prove he has reformed. The Defendant stated that while in prison he attended alcohol abuse and anger management programs and was involved in church

---

[1] While the case at issue involves only one conviction for arson in Sequatchie County, the record reveals this conviction stemmed from a "crime spree" in which the Defendant committed other arsons, vandalism, and multiple thefts and set fire to personal property all within a few weeks' time. At the sentencing hearing, the Defendant, through counsel, did not deny his offense was part of a "crime spree" but preferred that it be termed "a mess of trouble."

activities. He further stated that he had placed himself in "God's hands," and was "trying to straighten up." On cross-examination, the Defendant admitted that he knew the victims of his arson because he had obtained a car from them, and a "couple of months later" the transmission went out. As for his other fire-related offenses, the Defendant admitted that he burned down his friend's house because he was angry at him, and he burned his ex-girlfriend's father's truck to destroy evidence of his theft. He also admitted that he had received alcohol and drug counseling before as a juvenile.

At the conclusion of the sentencing hearing, the trial court determined that the Defendant was a Range I, standard offender. Starting at the minimum within the statutory range of three to six years, the trial court found three enhancement factors applicable and enhanced the Defendant's sentence by two years. However, the court found two mitigating factors applicable, although with little weight, and reduced the sentence by six months thereby imposing an effective sentence of four and a half years. The trial court denied both probation and alternative sentencing, and ordered the Defendant to serve his sentence in the TDOC. The Defendant timely filed a notice of appeal.

**ANALYSIS**

On appeal, the Defendant claims the trial court erred in imposing an excessive sentence and in denying him probation or other alternative sentencing. Specifically, the Defendant claims that the trial court failed to apply two mitigating factors and misapplied several enhancement factors. The Defendant also argues that he should have received probation because he can be rehabilitated, or in the alternative, he should not have been sentenced to total confinement. The Defendant asserts that he was a presumptive candidate for an alternative sentence, and the trial court erred in finding his case met criteria which negated this presumption. We disagree.

**I. Standard of Review**

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

When a convicted defendant challenges the manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn.

1991).  If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result.  See State v. Fletcher, 805 S.W. 2d 785, 789 (Tenn. Crim. App. 1991).  We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record.  See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001).  The burden of showing that a sentence is improper is upon the appealing party.  See Tenn. Code Ann. § 40-35-401 Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

The presentence report reflects that at the time of sentencing the Defendant was twenty-two years old and unmarried.  He has a child from a prior relationship, whom he stated he helps support, although no support order has ever been entered.  He dropped out of school in the tenth grade.  He does not have a history of steady employment.

## II.  Excessive Sentence

In calculating a sentence for a Class C felony conviction, the "presumptive sentence . . . shall be the minimum sentence in the range if there are no enhancement or mitigating factors."  Tenn. Code Ann. § 40-35-210(c).  If there are enhancement, but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range.  See Tenn. Code Ann. § 40-35-210(d).  A sentence involving both enhancement and mitigating factors for a Class C felony requires the court to start at the minimum, next assign the proper weight for any applicable enhancement factor(s), and finally apply a reduction within the range as appropriate for any mitigating factor(s).  See Tenn. Code Ann. § 40-35-210(e).  The sentence for a Class C felony as a Range I, standard offender is "not less than three (3) nor more than six (6) years."  Tenn. Code Ann. § 40-35-112(a)(3).  Therefore, the Defendant's  presumptive sentence for his Class C felony conviction for arson is the minimum in the range, or three years.  The Defendant now claims his sentence was improperly enhanced and not appropriately mitigated.

### A. Enhancement Factors

While not entirely clear, the Defendant seems to argue that the trial court improperly enhanced his sentence by finding he has a "previous history of criminal convictions or criminal behavior."  See Tenn. Code Ann. § 40-35-114(2).  The Defendant argues that, contrary to the trial court's conclusion, he does not have a "long history of criminal conduct as an adult," but rather all of his "criminal conduct occurred in a short period of time."   We note that the Defendant does not have an extremely long history of criminal conduct as an adult; however, he has been an adult for only a few years.  Nonetheless, in the four years since turning age eighteen, the Defendant has managed to obtain no less than ten criminal convictions.  We find the trial court did not err in enhancing the Defendant's sentence based upon his previous criminal history.  This issue is without merit.

The Defendant also claims that the trial court erred by enhancing his sentence based upon its own findings of fact that the "amount of damage to property . . . taken from the victim was particularly great," and he has "a previous history of unwillingness to comply with the conditions of a sentence involving release in the community." Tenn. Code Ann. § 40-35-114(7) and (9). The Defendant argues that his Sixth Amendment right to a trial by jury was impugned when the trial court made determinations of fact for sentence enhancement purposes that were not submitted to a jury or admitted by him, citing <u>Blakely v. Washington</u>, 124. S.Ct. 2531 (2004). However, our supreme court has recently held that the enhancement component of Tennessee's sentencing structure does not violate a defendant's Sixth Amendment right to a trial by jury. <u>See</u> <u>State v. Gomez</u>, ___ S.W.3d ___, No. M2002-01209-SC-R11-CD, 2005 WL 856848 (Tenn., Nashville, April 15, 2005). Rather, our supreme court held that Tennessee's sentencing structure "merely requires judges to consider enhancement factors," and unlike the sentencing guidelines struck down in <u>Blakely</u>, "does not <u>mandate</u> an increased sentence upon a judge's finding of an enhancement factor." <u>Gomez</u>, ___ S.W.3d at___, 2005 WL 856848, at *20. Thus, relying on <u>Blakely</u> as clarified by <u>States v. Booker</u>, __ U.S. ___, 125 S.Ct. 738 (2005), our supreme court has determined that Tennessee's sentencing structure provides the type of "'intermediate,' non-mandatory, advisory sentencing scheme" that the United States Supreme Court has expressly ruled acceptable, thereby permitting judges to exercise the type of sentencing discretion applied in the case at hand. <u>Gomez</u> at * 20. Therefore, the Defendant's claim of a Sixth Amendment right violation based on the trial court's enhancement of his sentence is without merit

### B. Mitigating Factors

The Defendant also argues that the trial court erred when it declined to apply two mitigating factors and failed to reduce his sentence accordingly. We note the trial court did reduce the Defendant's sentence by six months because it found that he lacked judgment due to his young age, and he had assisted the authorities by implicating his co-defendant in the arson. <u>See</u> Tenn. Code Ann. § 40-35-113(6) and (9). However, the Defendant now argues that his sentence should have been further reduced because his "criminal conduct neither caused nor threatened serious bodily injury," and because he had attended alcohol abuse and anger management classes while in prison. <u>See</u> Tenn. Code Ann. § 40-35-113(1) and (13).

The trial court was presented with the Defendant's arguments as to mitigating factors (1) and (13) and rejected both. We find that factor (1) would not be applicable considering the inherent danger in setting fire to a building. Certainly, a fire of such magnitude threatens bodily injury to unknown persons that may have been in the building, persons nearby, and the emergency personnel who must respond to the fire. We conclude the trial court did not err in declining to mitigate the Defendant's sentence based on factor (1), that his crime did not threaten serious bodily injury.

While a trial court may consider various facts and circumstances under the "catch all" provision of Tennessee Code Annotated section 40-35-113(13), it is not required to consider such factors. <u>See</u> <u>State v. Williams</u>, 920 S.W.2d 247, 261 (Tenn. Crim. App. 1995). Moreover, we note that the Defendant admitted he also received drug and alcohol abuse counseling several years prior to these crimes while in juvenile detention, yet he continues to drink to excess and commit criminal

offenses. The Defendant has failed to convince us that the trial court erred in declining to mitigate his sentence due to his attendance of alcohol abuse and anger management classes while in prison for prior criminal convictions. This issue has no merit.

## III. Manner of Service

The Defendant also argues that the trial court erred in denying him probation, and in the alternative, erred in denying him alternative sentencing. We disagree.

### A. Denial of Probation

A defendant is eligible for probation if the actual sentence imposed upon the defendant is eight years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. See Tenn. Code Ann. § 40-35-303(a). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. See id. § 40-35-303(b). No criminal defendant is automatically entitled to probation as a matter of law. See id. § 40-35-303(b), Sentencing Commission Comments; State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). Rather, the defendant must demonstrate that probation would serve the ends of justice and the best interests of both the public and the defendant. See State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002).

In determining whether to grant probation, the court must consider the nature and circumstances of the offense; the defendant's criminal record; his or her background and social history; his or her present condition, both physical and mental; the deterrent effect on the defendant; and the defendant's potential for rehabilitation or treatment. See id. If the court determines that a period of probation is appropriate, it shall sentence the defendant to a specific sentence but then suspend that sentence and place the defendant on supervised or unsupervised probation either immediately or after the service of a period of confinement. See Tenn. Code Ann. §§ 40-35-303(c), -306(a).

We begin by noting that the Defendant is eligible for probation. See Tenn. Code Ann. § 40-35-303(a). However, the Defendant has failed to demonstrate that probation would both serve the ends of justice and would be in the best interests of the public and the Defendant. See Souder, 105 S.W.3d at 607. The trial court found that "[p]robation has not been very successful over the years with this defendant. He just has had problems complying and so I don't think probation is -- certainly straight probation is not involved here." The record reveals that the Defendant has violated the terms of previous periods of probation on numerous occasions. In 2002, his probation was revoked, and he was placed under house arrest. The Defendant then "cut off his ankle bracelet monitor, thus also violating his house arrest." In 2003, the Defendant violated probation two times. Additionally, the record reveals the Defendant violated probation twice as a juvenile.

In short, the evidence contained in the record is sufficient to justify denial of probation; the Defendant has an extensive criminal record, his background reveals his mother has tried to prevent his criminal activity to no avail, and probation has provided no deterrence for the Defendant in the

past. Thus he has demonstrated remarkably little potential for rehabilitation. Accordingly, we find the trial court did not err in denying the Defendant probation. This issue has no merit.

### B. Denial of Alternative Sentencing

A defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). See also State v. Fields, 40 S.W.3d 435, 440 (Tenn. 2001). The following considerations provide guidance regarding what constitutes "evidence to the contrary" which would rebut the presumption of alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1); see also State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. See Tenn. Code Ann. § 40-35-103(2), (4). The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence. See id. § 40-35-103(5).

The Defendant was convicted as a Range I, standard offender of a Class C felony, and we acknowledge the presumption that he is a favorable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6). However, the trial court properly found that denial of alternative sentencing was appropriate upon consideration of the three sentencing guidelines pertaining to sentences of confinement.

First, the court found that the Defendant's confinement was necessary to protect society from an individual with a long history of criminal conduct. See Tenn. Code Ann. § 40-35-103(1)(A). The evidence contained in the record supports this conclusion. The Defendant, now in his early twenties, has no less than ten criminal convictions collected in only four years' time. These include seven misdemeanor convictions for offenses such as public intoxication, vandalism, and evading arrest. However, the Defendant's criminal activity has increased in its severity as he has aged, and his record now includes three recent felony convictions for arson, theft over $10,000, and setting fire to personal property. The court noted that it is "hard to have a long history when you're 21 years old or 22 years old, but he does." Additionally, the record reveals that the Defendant had at least

twelve juvenile adjudications between the years of 1996 to 1999. The trial court concluded that the Defendant had a "very strong record with regard to criminal conduct, so that certainly argues for incarceration." We find the record supports the court's conclusion that the Defendant has a long history of criminal conduct, and therefore incarceration is necessary to protect the public.

Second, the trial court found the Defendant should be confined to avoid depreciating the seriousness of the offense. See Tenn. Code Ann. § 40-35-103(1)(B). The court noted that the Defendant's offense was "about as serious an offense as you can get, a personal attack on somebody's business, livelihood, burning something down of that nature, that's serious. That's really serious . . . ." The court also noted that the Defendant had burned structures and personal property before, further highlighting the need to avoid depreciating the seriousness of the Defendant's crime in this case.

The Defendant argues on appeal that there was no proof that his crime of arson rose to the level of "'especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring probation," citing State v. Cleavor, 691 S.W.2d 541, 543 (Tenn. 1985). However, as the trial court stated for the record, the Defendant had on more than one occasion burned down the home or business of a person he was angry with. His offense in this case is certainly a reprehensible and offensive crime apparently triggered by dissatisfaction over a used car. As the trial court noted, the Defendant's crime threatened the livelihood of the victims as well as the lives of those in the community and those emergency personnel forced to fight the fire. We find the facts and circumstances of the Defendant's crime were serious. Accordingly, the record supports the trial court's finding that a sentence of confinement is necessary to avoid depreciating the seriousness of the Defendant's offense. See Tenn. Code Ann. § 40-35-103(1)(B).

Finally, the trial court found that measures less restrictive than confinement had been frequently or recently applied unsuccessfully to the Defendant. See Tenn. Code Ann. § 40-35-103(1)(C). As noted above, the record reveals the Defendant violated the terms of his probation or house arrest no less than four times in the few years he has accumulated his adult criminal record, and violated probation twice as a juvenile. Thus, we find the evidence is sufficient to support the trial court's conclusion that measures less restrictive than confinement have proved unsuccessful for the Defendant in the past, and a sentence of confinement is therefore appropriate.

The Defendant also argues that the trial court committed a Blakely error when it made its own findings related to the imposition of a sentence of confinement rather than submitting the issue to a jury. As stated above, our supreme court has recently held that Tennessee's sentencing structure does not trigger a Blakely violation, therefore this claim is also without merit. See Gomez, ___ S.W.3d ___ (Tenn. 2005). We also note that even prior to our supreme court's recent ruling in Gomez, this court had held that Blakely applied only to the length of a sentence, and not to the manner of service. See State v. Earice Roberts, No. W2003-02668-CCA-R3-CD, 2004 WL 2715316, at *12 (Tenn. Crim. App., Jackson, Nov. 23, 2004).

Additionally, after considering the Defendant's extensive criminal history, we find his sentence of confinement in this case is not greater than that deserved for the offense, and is the least severe measure necessary to achieve the purpose of his sentence. See Tenn. Code Ann. § 40-35-103(2), (4). Moreover, the Defendant's extensive criminal history earned in only a few years, as well as multiple probation violations, both indicate a clear lack of potential for rehabilitation. See Tenn. Code Ann. § 40-35-103(5).

We find the Defendant's extensive criminal history, the seriousness of his current offense as well as his propensity to commit ever more serious crimes, and his failure to successfully complete previous forms of alternative sentencing, all support the trial court's imposition of a sentence of confinement. Accordingly, the trial court did not err in denying the Defendant alternative sentencing. This issue is without merit.

## CONCLUSION

For the foregoing reasons, we find the trial court did not err in its determination of the length of the Defendant's sentence or the manner in which it is to be served. The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE